[Civil Nos. 1239 and 1264.   Filed February 17, 1913.]

[129 Pac. 1104.]

ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellant, v. GLOBE HARDWARE COMPANY, a Corporation, and OLD DOMINION COMMERCIAL COMPANY, a Corporation, and FIRST NATIONAL BANK, a Corporation, and JOHN BRACCO, and JOHN T. PARKER, and JOSEPH AUGUSTI, and F. E. LONG, and MAXON–NOWLIN COMPANY, a Corporation, Appellees, and SOLOMON–WICKERSHAM COMPANY, a Corporation, Plaintiff in Error, Intervener in Above Consolidated Cases.

1. MECHANICS' LIENS—TIME OF FILING STATEMENT—STATUTES.—Under Civil Code of 1901, paragraph 2898, providing that persons furnishing services or material toward the alteration, repair, etc., "shall deliver to the owner, within sixty days from the completion of the improvement, his statement," etc., materialmen and those furnishing services may perfect their demands into a lien at any time after they have ceased to labor or furnish material, whether or not the original contractor has completed the structure, providing it is done not later than sixty days after its completion.

2. PLEADING—PLEA OF NONPAYMENT—GENERAL DEMURRER—CURED BY JUDGMENT.—An allegation that a debt "was due and owing" was a legal conclusion and an unsatisfactory plea of nonpayment; but the defect, as against a merely general demurrer, was cured by a judgment, where it does not appear that it was directly called to the attention of the court.

3. PLEADING—HARMLESS ERROR—SUBSTANTIAL JUSTICE.—Under Constitution, article 6, section 22, providing that no cause shall be reversed for technical error in pleading or proceedings, when upon the whole case it shall appear that substantial justice has been done, an allegation that a debt "was due and owing," though unsatisfactory as an allegation of nonpayment, will be held cured by judgment, where the issue of indebtedness was tried out as fully as though the pleadings were perfect, and it does not appear that the court's attention was directly called to it, though there was a general demurrer.

4. RAILROADS—COMPLAINT—SERVICES.—In an action to enforce a mechanic's lien on a railroad, allegations that teams were furnished the contractor "for the purpose of constructing the line of railroad, and that such teams were employed for the purpose and did construct

the said line," were sufficient to show that the teams were actually used in the work.

5. MECHANICS' LIENS—WAIVER OF RIGHT OF LIEN—WAIVER OF LIEN BY CONTRACTOR.—While a materialman or laborer could personally waive his right to a lien on an improvement, the contractor cannot waive it for him in his contract with the owner.

6. APPEAL AND ERROR—REVIEW—APPEAL FROM JUDGMENT—MOTION FOR NEW TRIAL.—Under Civil Code of 1901, paragraphs 1212, 1213, 1214 and 1493, providing when the supreme court shall have jurisdiction of appeals and when appeals could be taken, an appeal from the judgment does not authorize a review of the whole record, but is confined to fundamental errors in the judgment-roll and the court may not look into the evidence and alleged errors in its admission or rejection; and one failing to appeal from an order overruling a motion for a new trial abandoned any error propounded by it.

7. APPEAL AND ERROR—HARMLESS ERROR—INTERVENTION.—Where one who had furnished supplies to a contractor got judgment against him and garnished the owner, a denial of his application to intervene in a suit by others, who had perfected mechanics' liens on the property, where the amount necessary to pay such liens exceeded the amount due the contractor, was not prejudicial.

APPEAL from a judgment of the District Court of the Fifth Judicial District, in and for the County of Gila. E. W. Lewis, Judge. Affirmed.

STATEMENT OF FACTS BY THE COURT.

The Crandall Contracting Company, on the 21st of August, 1909, entered into a contract with The Gila Valley, Globe & Northern Railway Company "to furnish all labor and equipment and to perform all work, consisting of clearing, grubbing, ditching, excavating material from cuts and borrow-pits and depositing same in embankments in accordance with the specifications hereinafter named, in the construction of a branch line five and one-half miles long, more or less, said branch to leave the main line at south end of Globe Yard and extending to the mines of the Arizona Commerical Company. The aforesaid work shall be commenced on or before the first day of September, 1909, at such points as the engineer may direct; and shall be completed on or before the first day of December, 1909. It shall be carried on at such points and with such rate of progress as the engineer may direct." Then follows the specifications of work to be done and the prices

to be paid.  The appellant, Arizona Eastern Railroad Company, an Arizona corporation, in January, 1910, became the owner of the lines of railroad theretofore belonging to G. V., G. & N. Ry. Co., and at the same time assumed all of the obligations of Crandall Contracting Company's contract.  On or about April 3, 1910, the "Contracting Company" threw up its contract and abandoned the work, owing the several sums for which these suits are brought.  The appellant then took up the work and without cessation completed the work on May 28, 1910.  The appellees filed liens against the line or piece of railroad described in contract, alleging work and labor performed or material furnished to the contracting company.

The lower court ordered a consolidation of all of the above cases and they were tried as one case.  Judgment was entered in favor of appellees against the Crandall Contracting Company, and, also, a decree foreclosing their liens against appellant's line of railroad.  Appellant brings the case here on appeal from the judgments foreclosing the liens.

Messrs. Rawlins & Little, Mr. E. S. Ives and Mr. S. L. Pattee, for Appellant.

Mr. George J. Stoneman, for Globe Hardware Company and Old Dominion Commercial Company, Appellees.

Mr. George R. Hill, for Consolidated Cases, Appellees, and Messrs. Nave & Campbell, for Plaintiff in Error, in Case No. 1264.

ROSS, J.—The appellant railroad company interposed to all the complaints general and special demurrers, and now insists that the trial court erred in overruling the demurrers.

One objection, and it applies to all the complaints, is that they fail to allege the appellant was served with a copy of the lien claims within sixty days after the completion of the line of railroad against which the lien is claimed, or to allege that same was completed at the time of making and serving of the statements of lien.  The complaints show that the lien claims were served on defendant and filed with the county recorder within sixty days after rendering the services or

furnishing the material, and alleges that the contracting company "stopped said·work and abandoned said contract" on April 3, 1910.

Paragraph 2898, Revised Statutes of 1901, provides that persons who furnish material or render service toward the erection, alteration, repairs, construction, or completion of any building erected or improvement made, under a contract between the owner and original contractor, shall deliver to the owner, within sixty days from the completion of such building or improvement, his statement of account; and that thereupon the owner may, for his protection, retain out of the amount due, or to become due, the original contractor, such account. The owner and the building or improvement, upon the service of such statement of account, become liable for the reasonable value of such labor done and material furnished.

The appellant insists upon a literal construction of this section, and argues that laborers and materialmen who render services or furnish material must await the completion of the structure before attempting to fix their liens; and that, inasmuch as the complaints in these cases fail to show a completed structure, the lien claims were filed prematurely, and must therefore fall.

The primary object of our lien law is to insure to the laborer and materialman the payment of their accounts, and incidentally to protect the owner against the filing of liens by such persons against his property for services and material rendered and furnished the original contractor. The statement of lien provided for in paragraph 2898, *supra*, when served upon the owner, entitles him to withhold payment of the amounts claimed from the contractor, and thereby insures him against the delinquencies of the latter. This being so, it would seem that diligence on the part of those working for or dealing with the contractor should be encouraged; otherwise the owner might pay off the original contractor and later find his property plastered with liens of laborers and materialmen whose accounts had been left unpaid.

Our view of paragraph 2898 is, that it limits the time after which no lien may be filed against the property of the owner to sixty days after the completion of the structure. In other

words, we hold that the persons dealing with the original contractor may perfect their demands into a lien against the property of the owner at any time after they have ceased to labor or furnish material, whether the original contractor has completed the structure or not, providing it is done not later than sixty days after the completion of the structure. Such a construction is in harmony with paragraph 2889, which provides generally for persons performing labor or furnishing material directly to the owner. Under the paragraph the persons performing labor or furnishing material may fix and secure the lien within ninety days after the completion of such labor or furnishing material. They are not required to await the completion of the structure before perfecting their lien. The limitation has reference to the completion of the performance of labor or the furnishing material, regardless of the completed or incompleted condition of the structure at the time.

The construction contended for by appellant would often inflict great hardship and loss to the owner of the structure or improvement, and defer to unreasonable lengths the time of payment of laborers and materialmen dealing with the contractor, or entirely defeat them · in the collection of their claims. The contractor might complete the structure and collect the contract price, leaving unpaid many bills for labor and material. The laborers and materialmen could delay filing liens until the last day of sixty days after the completion of the structure and enforce their claims, notwithstanding the contractor had been fully paid the contract price. Or the laborer and materialman dealing with the contractor may have finished their contract in the performance of specified labor, or in furnishing definite and specified material, payments for which might be postponed for months or years because of suspension of work by contractor, or defeated entirely by abandonment on the part of the contractor.

In *Baldridge* v. *Morgan*, 15 N. M. 249, Ann. Cas. 1912C, 337, 106 Pac. 342, it was the contention of the appellant that the lien had been filed prematurely, because it was filed before the building was completed. The New Mexico statute is that "every person save the original contractor, claiming the benefit of this act, must, within sixty days after the completion of any building, file for record," etc. That court said:

XIV Ariz.—26

"Here the question is squarely presented to us whether the legislature fixed a period of time during which a lien of a subcontractor must be filed, or did it fix a point of time after which such a lien could not be filed? . . . We therefore hold that the clause that requires a subcontractor to file his claim of lien 'within sixty days after the completion of any building,' etc., fixes a time after which such lien is not to be filed, and does not fix a period of time during which it must be filed; or, in other words, that the time for filing does not commence to run from or await the completion of the building. *Hunter* v. *Truckee Lodge,* 14 Nev. 24.''

This construction of paragraph 2898 dispenses with the necessity of determining what effect the abandonment of the work by the original contractor had upon the rights of the appellees, holding as we do that their right to fix and secure their liens dated from the time they quit work or ceased to furnish material, and not from the completion of the structure or improvement, and that the limitation upon this right to fix and secure the lien is that it must be perfected not later than sixty days after the completion of the structure or improvement.

The appellant insists that the various complaints (except in the Globe Hardware Company case) are vulnerable to the general demurrer, upon the ground that they fail to allege that the amounts claimed had not been paid at or prior to the times of filing complaints. Nonpayment is alleged in the Old Dominion Commercial Company case, in the First National Bank case, in the John Bracco case, in the Maxon-Nowlin Company case, and in the F. E. Long case, and it therefore follows that the objection to these complaints is unfounded.

In the Augusti and Parker cases the claims of lien, as filed in the county recorder's office, are set forth in the complaints *in haec verba,* and in these notices of lien is the statement that "said sums are now due and owing over and above all offsets and counter claims," and that such sums "are the net amounts now due and owing the said employees and lien claimants," less setoffs. In the Augusti case is the further allegation that, at the time of instituting the suit, there was due the amount claimed in the notice of lien; and in the Parker case that there was owing plaintiff the sum claimed

in the notice of lien. Neither of these complaints, in so many words, alleges nonpayment. Appellant contends that these complaints are fatally defective for that reason. There are allegations of employment at stipulated wages, of the rendering of the service or full performance, of the amount due and owing over and above offsets and counterclaims, both in the lien notices that are incorporated into the complaints and by affirmative allegations in the complaints.

The appellant's answer, in addition to the general demurrer, contained several special demurrers and pleas in bar of the action. The special demurrers did not attack the complaint for a failure to plead nonpayment; nor was there a plea of payment in the answer. The complaints stated good causes of action, except for the omission to allege nonpayment. We cannot tell from the record whether the defect now complained of was directly called to the attention of the trial court. The allegation that the debt "was due and owing" was a legal conclusion of the pleader and a very imperfect and unsatisfactory plea of nonpayment; but we think this defect in the complaints, as against a general demurrer, was cured by the judgment. *Grant* v. *Sheerin,* 84 Cal. 197, 23 Pac. 1094.

In *Penrose* v. *Winter,* 135 Cal. 289, 67 Pac. 772, a default case, the court said: "It is true that the allegation [of nonpayment] was made in the form of a legal conclusion, in which the material fact was merely impiled; but, in the absence of any demurrer, such faults of pleading are cured by the judgment." We are of the opinion that if a complaint contains sufficient facts to sustain a default judgment the same facts ought to be held sufficient to sustain a judgment after trial on the merits. It is not logical to say that a complaint is so defective as to be insufficient to support a judgment after trial on the merits (*Ryan* v. *Holliday,* 110 Cal. 335, 47 Pac. 891), but sufficient to support a judgment by default. *Penrose* v. *Winter, supra; Knox* v. *Buckman,* 139 Cal. 598, 73 Pac. 428.

We think the supreme court of Montana, in *Hershfield* v. *Aiken,* 3 Mont. 442–452, has adopted the correct, reasonable, and just rule. In that case it is said: "In this case the issue joined necessarily required on the trial proof of the facts defectively stated in the complaint, as to whether the amount

of the notes was due and unpaid. In attempting to prove that they were due and payable as alleged, the plaintiffs must have proved that they were due and unpaid, and so the court found. The conclusion is irresistible, that in attempting to prove the facts imperfectly stated, they must have made such proof as would have supported the averment, had it been perfect and complete. Such proof, after verdict or decree, aids the averment and cures the defect. And it does not defeat the efficacy of such proof if, technically speaking, the defective averment was but a conclusion of law. Evidently it was an attempt to state facts; and proof of this character, necessarily given upon a trial of the defective issue, must, in like manner, cure this as well as any other defect. And so we think it may safely be said that, where facts are entirely omitted, but are so connected with the facts alleged that the facts alleged could not be proved without proving those omitted, after verdict, the facts omitted will be presumed to have been proved upon the trial, and a defective complaint, aided by such proof, will support a judgment.''

In thus holding that the defective complaints in the Augusti and Parker cases are cured by judgment, we are giving meaning and effect to our constitution, which provides that ''no cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done.'' Sec. 22, art. 6.

The issue of indebtedness was tried out in these cases as fully as it could have been tried out on perfect pleadings. The appellant is not shown to have suffered any injury by reason of the defective pleadings.

It is also urged that the complaint in the Maxon-Nowlin Company case fails to show that the teams, for the use of which a lien is claimed, were ever actually used in the construction of the appellant's line of railroad. The allegations of the complaint are that the teams were furnished the contracting company ''for the purpose of constructing the line of railroad above described,'' and then follows an itemized statement of the number of animals furnished, the length of time furnished, and the price to be paid per day and month; ''that the said teams were employed for the purpose and did construct the said above-described line of railway.'' We think these allegations, while inartistically worded, are suffi-

cient to show that the teams were actually used in the work of constructing the appellant's line of railroad.

Another point raised by demurrer grows out of the contract between appellant and the Crandall Contracting Company. This contract provided that neither the contractor, his assigns, subcontractors, employees, laborers, nor any person or corporation furnishing material or performing labor upon the work contracted to be done, should have, hold, or enforce any lien against appellant's property under the laws of the territory of Arizona now in force, or which may be hereafter enacted. This contract was pleaded by the appellant in bar of the actions herein. To this defense the appellees demurred, on the ground that it failed to constitute any defense. The trial court sustained the demurrer. The appellant's position is that the contractor, by this agreement, waived the right to a lien, not only for itself, but also for all persons or concerns furnishing material or performing labor under the contract. The right to claim the lien is a privilege, and the person to whom it is granted by the statute unquestionably may waive it. In this case the contractor did, by this agreement, waive its right to claim the lien for any unpaid balance; but we do not think, under our statute, that the right of lien by laborers and materialmen is derivative or dependent upon the agreement of the contractor, but that their rights are independent of such agreement; that their right to a lien is unaffected by any contract between the owner and the contractor; and that, while they personally might waive their right to a lien on the property of the owner which has been made or improved by their labors or contributions, the contractor cannot, by his agreement, waive it for them.

The Arizona law giving liens against railroads is found in paragraph 2902, Revised Statutes of 1901, as follows: "All contractors, subcontractors, laborers, operatives and other persons who may labor or furnish labor, teams, materials, machinery, fixtures or tools in the construction or repair of any railroad, locomotive, car or other equipment, or who may labor in the operating of a railroad, and to whom money or wages are due or owing for such labor, teams, tools, or materials, shall hereafter have a lien upon such railroad and its equipment for such sums as are unpaid."

The purpose and intent of the legislature to give to all the enumerated parties in the above paragraph a direct lien could not be expressed in words more explicit. Each and all of them "to whom money or wages are due or owing for such labor, teams, tools, or material shall hereafter have a lien upon such railroad and its equipment for such sums as are unpaid."

The appellees base their right to a lien upon claims for wages of laborers who worked for, or for material furnished to, the original contractor. "Liens of this kind, except where the statute otherwise provides, arise by operation of law, independent of the express terms of the contract, in case the stipulated labor is performed or the promised materials are furnished; the principle being that the parties are supposed to contract on the basis that, if the stipulated labor is performed or the promised materials are furnished, the laborer or materialman is entitled to the lien which the law affords, provided he gives the required notice within the specified time." *McMurray* v. *Brown*, 91 U. S. 257, 266, 23 L. Ed. 321; *Van Stone* v. *Stillwell etc. Mfg. Co.*, 142 U. S. 128, 136, 35 L. Ed. 961, 12 Sup. Ct. Rep. 181; *Central Trust Co.* v. *Condon*, 67 Fed. 84, 14 C. C. A. 314.

In *Central Trust Co. of New York* v. *Richmond N., I. & B. R. Co.*, 68 Fed. 90, 41 L. R. A. 458, 15 C. C. A. 273, the court said: "It is not a lien originating in a contract for a lien, but arises out of the statute, independent of any agreement for a lien, and is based upon the equity of paying for work done or materials delivered." *Austin & N. W. Ry. Co.* v. *Daniels*, 62 Tex. 70.

It is too evident to justify mention or comment, especially in contracts for the construction of railroads, that it was in contemplation of the parties that many hundreds, if not thousands, of laborers would be employed to perform work, and that much material would be needed; and we think it violative of no fundamental right to hold that the owner contracted in view of the statute giving such laborers and materialmen independent liens. It would be an unreasonable exaction to require all of these laborers and materialmen to investigate and learn the terms of the contractor's agreement with the owner, or deal at their hazard, where the law provides no means of access to the contract, such as its recordation.

Judge Lurton, in *Jones* v. *Great Southern Fireproof Hotel Co.,* 86 Fed. 370, 387, 30 C. C. A. 108, 125, reviews most thoroughly and learnedly the question herein involved, and we quote an excerpt from his opinion with approval: ''In most instances, it is well understood that the contractor will employ others to aid in or do the work and to furnish the materials necessary. The earlier statutes did not extend any protection to those who should be thus employed by the contractor. To remedy this, some statutes gave to such subcontractors, workmen, or furnishers of materials a mere derivative lien, by which they might be substituted to the lien and claim of the contractor. In others, an independent lien was given to all who should, at the instance of the owner or his contractor, contribute toward the completion of the work either labor or materials. Of this character is the Ohio statute under consideration. Such statutes rest upon the principle of natural justice, which lies at the foundation of the many liens or preferences among creditors which we have cited from both the common and civil law. It is true that a lien is created in favor of one with whom the owner has no direct contractual relations. But, if the owner makes the contract with the law before him, the law enters into and becomes a part of the contract. The legal effect of the contract is to give a lien to all who, at the instance of his contractor, shall be employed to furnish labor or materials for the work which he has let out. So far as such a statute is limited to future contracts, it cannot be said to impair the obligation of a contract. If the law be subject to no other objections, it impairs no contract; for all thereafter made are entered into upon the basis of the law.''

The highest courts of the states of Maine and Montana have upheld the right of independent liens by laborers and materialmen, notwithstanding the contract between the owner and the original contractor contained a provision against liens. *Norton* v. *Clark,* 85 Me. 357, 27 Atl. 252; *Miles* v. *Coutts,* 20 Mont. 47, 49 Pac. 393. And Colorado, while not deciding the question, intimates a leaning that way in *Jarvis* v. *State Bank,* 22 Colo. 309, 55 Am. St. Rep. 129, 45 Pac. 505, 508.

At 27 Cyc. 95, it is said: ''But the more generally accepted view is that the owner and contractor cannot, by contract between themselves, deprive the subcontractor, materialman,

or workman of the right to a lien which the statute gives him.'' We think that the just rule, and are contented to adopt it.

The appellant contends that the judgment of the trial court should be reversed for errors in the admission of evidence and for want of evidence to sustain it. The appeal is from the judgment only. A motion for a new trial was made and overruled, and the order overruling the motion is assigned as error. No appeal, however, was taken from the order overruling the motion for new trial. The appeal being from the judgment only, the question is: May we, under the law, review errors alleged to have been committed in the allowance or rejection of evidence, or look into the evidence to determine if it supports the judgment?

Paragraph 1212 of the Revised Statutes of 1901, provides that the supreme court shall have jurisdiction to review, upon appeal, the judgments of the district courts (now superior courts) in the four cases enumerated. Paragraph 1213 provides that upon the appeal from the judgment any intermediate order involving the merits and necessarily affecting the judgment may be reviewed. Paragraph 1214 provides that the supreme court shall also have jurisdiction to review, upon appeal, the following orders of the district courts (now superior courts) : '' (1) An order refusing a new trial or granting a motion in arrest of judgment. . . . '' Paragraph 1493 provides that ''an appeal . . . may be taken to the supreme court from any final judgment, . . . and from any orders mentioned in section 1214. . . .''

Reading these paragraphs together, it seems to us that a party, feeling aggrieved by the order overruling his motion for a new trial to have the same reviewed, must appeal from such order. The appeal from the judgment does not include an appeal from the order overruling the motion for a new trial. An appeal may be taken from both, but an appeal from the judgment does not authorize a review by this court of the whole record, as would be the case if the appeal was from both the judgment and order overruling the motion for a new trial. In other words, if the appeal is from the judgment only, this court, in its examination of the case, is confined to the judgment-roll, and may not look into the evidence and alleged errors in its admission or rejection.

The appellant failing to appeal from the order overruling the motion for a new trial, and the statute requiring such appeal to give this court jurisdiction to review the order, we are precluded from examining the record, except for errors of a fundamental character appearing in the judgment-roll. By failing to appeal from the order, the appellant abandoned the motion for a new trial and any error that was propounded by it, and is before this court as though no motion for a new trial had ever been made. If the appellant wanted this court to review the rulings of the trial court admitting and rejecting evidence, or if it wanted this court to pass on the sufficiency of the evidence to support the judgment, it should have not only made its motion for a new trial, but appealed from the order overruling the motion. *Grounds* v. *Ralph,* 1 Ariz. 227, 25 Pac. 648.

### SOLOMON-WICKERSHAM COMPANY, INTERVENER.

When the Crandall Contracting Company ceased operations and abandoned the construction work on appellant's line of railroad, it was indebted to Solomon-Wickersham Company in the sum of $13,000 for supplies furnished it. Solomon-Wickersham Company brought suit against the contracting company and garnished the appellant. Appellant answered the garnishment, admitting an indebtedness to the contracting company in a sum much less than the Solomon-Wickersham Company's demand, and in its answer pleaded the lien claims involved in the above-consolidated cases as a defense to a judgment on the writ of garnishment. The Solomon-Wickersham Company obtained judgment against the contracting company for the amount of its demands, but, pending the lien suits, action on the garnishment proceeding was postponed. After obtaining judgment against the contracting company, the Solomon-Wickersham Company filed its application for leave to intervene in the consolidated cases, which application was denied. Since we have held that the claims of appellees are liens upon the appellant's railroad, and it appearing that the total of lien judgments equals or exceeds the amount owing by appellant to the contracting company, the plaintiff in error could not be benefited by intervention. Had the liens been disallowed, the right of the plaintiff in error to intervene would be of vital interest, as

these same funds would be subject to its garnishment lien. If the application to intervene had been granted, the plaintiff in error could have secured no judgment against the garnishee, for the reasons that all its indebtedness to the contracting company was already impressed with the lien claims. It is not necessary for us to indicate what our ruling would be had the garnishee been possessed of funds of the debtor not already appropriated. Under the circumstances, the plaintiff in error suffered no injury. The trial court was right in denying the application to intervene.

The judgment of the lower court in the consolidated cases is affirmed, as is also the order denying the application of plaintiff in error to intervene.

FRANKLIN, C. J., and DUFFY, J., concur.

N. B.—Judge CUNNINGHAM being disqualified and announcing his disqualification in open court, the remaining judges, under sections 3 of article 6 of the constitution, called in Hon. FRANK J. DUFFY, Judge of the superior court of the state of Arizona, in and for the county of Santa Cruz, to sit with them in the hearing of this cause.

Application for rehearing denied.

---

NOTE.—As to what descriptions of persons may avail themselves of mechanics' lien laws, see note to 32 Am. Rep. 264.

As to waiver of lien generally, see note in 41 Am. Dec. 221.