[Civil No. 1418.   Filed February 20, 1915.]

[146 Pac. 510.]

C. O. FOLTZ, Appellant, v. A. H. NOON, Appellee.

1. MINES AND MINERALS—LABORER'S LIEN ON MINING CLAIMS.—Civil Code of 1901, paragraph 2904, giving laborers on any mining claim a lien for the amount unpaid, does not give a lien to laborers on mining property, unless they perform labor at the request of the owner or his agent, and an owner who gives to a purchaser an option contract, and permits him to enter on and develop the property, does not make him an agent, and does not authorize a lien for employees of the purchaser.

[As to who is a "laborer" within statute, giving liens to laborers, see note in Ann. Cas. 1913B, 138.]

2. CONSTITUTIONAL LAW—IMPAIRING OBLIGATION OF CONTRACTS—STATUTES—CONSTRUCTION.—Civil Code of 1913, paragraph 3654, giving laborers on mining claims a lien for labor by virtue of a contract between them and the owner or his agent, trustee, receiver, contractor or contractors, or purchaser under option contract, cannot apply to an owner giving an option contract to sell prior to the passage of the provision, for otherwise the provision will impair the obligation of a contract, in violation of Constitution, article 2, section 25.

3. MINES AND MINERALS—LABORER'S LIEN ON MINING CLAIMS—STATUTES—VALIDITY.—This section, when applied to contracts made subsequent to its taking effect, is valid.

APPEAL from a judgment of the Superior Court of the County of Santa Cruz. W. A. O'Connor, Judge. Affirmed.

The facts are stated in the opinion.

Mr. Charles Blenman and Mr. S. L. Kingan, for Appellant.

Mr. S. F. Noon and Mr. John B. Wright, for Appellee.

ROSS, C. J.—Appellant, as the assignee of numerous laborers who worked upon appellee's mining claims, instituted this action for the purpose of fastening a miner's lien upon said mining claims. The important allegations of the complaint are: that appellee is the owner of mining claims; that on March 6, 1912, he entered into a bond, option or contract of sale of mining claims to W. R. Layne, who thereafter, on March 18, 1912, assigned the agreement of sale to the Border Mines Company, and by the terms of said agreement the Border Mines Company "was permitted to go upon said mining claims and to work and develop the same"; that during the months of August, September, October, November and December, 1912, and January, 1913, the Border Mines Company employed miners and laborers in and about said mines, whom it promised to pay; that the Border Mines Company failed to pay such laborers and miners, whereupon the appellant made out his claim of lien for the labor and work of said employees and served a copy thereof on the Border Mines Company, and also filed the same as provided by law. The appellee's demurrer to the complaint was sustained, and, the appellant standing upon his complaint and refusing to amend, judg-

ment was entered for appellee. From this judgment this appeal is taken.

Appellant contends that his complaint stated facts sufficient to entitle him to a foreclosure of his claim of lien: First, under the law as it existed in the Revised Statutes of 1901, chapter 2, title 40, before amendment; and, second, in any event under said law as it was amended by chapter 66, first session of the legislature of 1912, carried forward into the Civil Code of 1913, as section 3654. The statute, before it was amended, read as follows:

"2904 (Sec. 25). All miners, laborers and others who may labor, and all persons who may furnish material of any kind, designed or used in or upon any mine or mining claim, and to whom any sum is due for such labor or material, shall have a lien upon the same for such sums as are unpaid."

This section with others, bearing on the same subject matter, in the chapter of which it is a part, has been construed as not giving a lien to miners and laborers who labor on mining property, unless they do so at the request of the owner or his agent. *Eaman* v. *Bashford*, 4 Ariz. 199, 37 Pac. 24; *Gates* v. *Fredericks*, 5 Ariz. 343, 52 Pac. 1118; *Hadley Co.* v. *Cummings*, 7 Ariz. 258, 64 Pac. 443; *Griffin* v. *Hurley*, 7 Ariz. 399, 65 Pac. 147; *Bogan* v. *Roy*, 10 Ariz. 237, 86 Pac. 13.

The contract of sale, or option or bond, as the pleader calls it, between Noon and Layne or his assignee, the Border Mines Company, is not set forth in the complaint, and is not before us. We are therefore unable to say whether its terms bring it within the rule laid down in *Eaman* v. *Bashford, supra.* The mere fact of such a contract, or option or bond, by the terms of which the proposed purchaser was permitted to enter upon, work and develop the mines, with no further or additional powers over the property, would not constitute the proposed purchaser the agent of the owner in the employment of labor. See cases, *supra.* The allegations of the complaint go no further than that.

The above-quoted section of the statute was, however, amended, the amendment taking effect on December 5, 1912, some eight months after the contract, option or bond from appellee to the assignor of the Border Mines Company, so as to entitle the miners and laborers who worked on said mines to a lien for their unpaid wages, providing its application to

the facts of this case does not impair the obligations of appellee's contract. The statute, as amended, reads as follows:

"3654. All miners, laborers and others who may labor, and all persons who may furnish material of any kind, designed or used, in or upon any mine, or mining claim, and to whom any sum is due for such labor or material, shall have a lien upon the same for such sums as are unpaid. And said lien, for labor performed, or material furnished, shall attach to said mine, or mining claim, whenever said labor was performed, or said material was furnished in or upon said mine, or mining claim, under any of the following conditions:

"(1) Under or by virtue of a contract between the person performing such labor, or furnishing said material, and the owner of said mining claim, or his agent, trustee, receiver, contractor or contractors.

"(2) Under or by virtue of a contract between the person performing such labor, or furnishing said material, and the lessee of said mine, or mining claim, or his agent, or contractor, where the terms of the lease from the owner of said mine or mining claim, to said lessee, permit said lessee to develop or work said mine, or mining claim.

"(3) Under or by virtue of a contract between persons performing said labor, or furnishing said material, and any person or corporation having an option to buy, or contract to purchase said mine, or mining claim, from the owner thereof, where said option or contract permits the person, or corporation, having said option to buy, or contract to purchase, to go upon said mine, or mining claim, and to work or develop the same."

The decisions of the predecessor of this court, to the effect that miners and laborers upon a mine were not entitled to a lien for their wages, unless employed by the owner or his agent, were well known to the legislature, and the amended statute, we may reasonably assume, was passed for the specific purpose of avoiding the effect of such decisions and making it as certain as possible that the miner and laborer should be paid for his labor.

But the serious question, as intimated above, is as to whether this amended law can be applied to the facts of this case. At the time that the contract of sale was entered into, the appellee, as well as all concerned, knew that miners and

laborers on mines could not enforce a lien for wages against the mines upon which they worked, unless employed by the owner or his agent. That was the settled law of this state at that time. The work and labor here sought to be fastened on to the appellee's mines, however, was done in part after the amendment went into effect. If the new liability created against his property would have released the appellee from his agreement to sell and left him unharmed, it would put a different face on it; but, notwithstanding the new liability created by a law passed subsequently to its execution, he was still bound by the terms of his agreement, and, if the amended statute applies, he could do nothing but stand by and watch debts accumulate against his property, that were never contemplated when he made his agreement to sell. The effect would be that the mine owner would be forced to assume obligations not within the terms of his contract by operation of law or otherwise, at the time of its making. In this instance, the appellee entered into his contract of sale in March, 1912, at a time when his property, under the law, was not liable for the wages of miners and laborers, when employed to work thereon by any other person than himself or his agent, and later, and during the life of such contract, the legislature has passed a law, according to appellant's contention, making his property liable for the wages of miners and laborers working thereon at the instance and request of others, acting under the terms of said contract.

In *Andrews & Johnson Co.* v. *Atwood,* 167 Ill. 249, 47 N. E. 387, the court said:

"It is a familiar rule that the law in force at the time a contract is executed enters into and forms a part of the contract."

The facts in this case involved the rights of a sub-subcontractor to a lien. Under the law at the time of the execution of the builder's contract, a sub-subcontractor was not entitled to a lien. But, before he had furnished material and performed labor, the law had been enlarged so as to include him as one entitled to a lien. The court said:

"The new act confers upon claimants rights heretofore unknown to the law, and at the same time it subjects the property of the owner to new liabilities. But if the construction contended for should be given the act of 1895, and it should

be held to govern contracts entered into before the act was passed, it would be an act impairing the obligation of contracts, and would clearly fall within the inhibition of the Constitution. Under the contract as executed on May 27, 1895, the George A. Fuller Company and its subcontractor, the Charles H. Simmons Company, were entitled to enforce a lien on the premises of Atwood for labor and material furnished under contract in the erection of Atwood's building, but no other contractors or materialmen had any lien whatever. But under the new statute if it governs this case, not only the Fuller Company and the subcontractor, the Simmons Company, have liens that may be enforced, but sub-subcontractors may also come in and enforce liens on the property. Thus the contract of Atwood, by the force of a statute, is changed, and new obligations imposed upon him and his property in favor of others who were strangers to him. The obligation of contracts is too sacred to allow this to be done.''

The text law is stated by Jones on Liens, volume 2, section 1184a, third edition, to be:

''The statute in force at the time a building contract is executed governs the rights of the parties in a proceeding to enforce a claim for a mechanic's lien thereunder. Thus, though a lien is sought to be enforced after the passage of a new law, the law, as it stood at the time the contract was made, will govern the rights of the parties. But the remedy is controlled by the law in force at the time suit is brought to enforce the lien.''

In *Gardner* v. *Resumption Co.*, 4 Colo. App. 271, 35 Pac. 674, the plaintiff claimed a lien by virtue of a statute that went into effect after the date of his contract of employment, but before he had labored on defendant's mines. It was held that he was not entitled to a lien; the court saying:

''It is a matter of common learning, as a general proposition, that a statute cannot be given a retroactive effect, and be made operative to affect rights and interests vested prior to its enactment. The construction for which the plaintiff contends would work a violation of this very well-settled principle.''

We are aware that there are cases apparently holding a contrary view to what we have announced as the law. In 8 Cyc. 1006, it is said:

"And, where there is a contract between a land owner and a builder for the erection of a building on the owner's land, a mechanic's lien law subsequently enacted, giving to subcontractors and materialmen who have sold on credit to the builder a lien on the property, is generally held to be constitutional. These decisions sometimes go on the theory that a lien law is in effect only an assignment to the lienor of the amount due the principal contractor; and the cases are for the most part agreed that the land owner cannot, on account of such lien, be obliged to pay more than the original contract price."

An examination of the cases cited by the author to sustain the text discloses an entirely different state of facts from the facts in the instant case. In those cases, the owner was the paymaster and had the right and power to protect himself by seeing to it that those who labored on or furnished material for his building were paid. Appellee had entered into contract by which he had agreed to sell, and under the terms of which he was to receive money instead of paying out money. There was no law, at the time he entered into the contract of sale, providing that miners and laborers working on his mine should have lien for their services when employed by the proposed purchaser, unless the latter was in fact or in law his agent. It is argued by the appellant that the amended law is merely remedial, and even though retroactive, does not impair the obligation of contract. As was said in *National Surety Co.* v. *Architectural Co.*, 226 U. S. 276, 283, 57 L. Ed. 221, 33 Sup. Ct. Rep. 17, 19:

"The decision must turn, we think, upon the familiar distinction between a law which enlarges, abridges, or modifies the obligation of a contract, and a law which merely modifies the remedy, by changing the time or the method in which the remedy shall be pursued, without substantial interference with the obligation of the contract itself. As Chief Justice MARSHALL observed in *Ogden* v. *Saunders,* 12 Wheat. 213, 349 [6 L. Ed. 606], the obligation and the remedy originate at different times. 'The obligation to perform is coeval with the undertaking to perform; it originates with the contract itself, and operates anterior to the time of performance. The remedy acts upon a broken contract, and enforces a pre-existing obligation.' "

We are of the opinion that the application of the amended law would burden the appellee's contract with a new obligation. One under the case made by the complaint that did not exist at the time he executed his contract of sale, and therefore violative of section 25, article 2, of the state Constitution, which provides that no law impairing the obligation of a contract shall ever be enacted. The law, however, is constitutional when applied to contracts made subsequent to its taking effect. *Jones* v. *Great So. etc. Co.*, 86 Fed. 370, 30 C. C. A. 108; *Arizona etc. R. Co.* v. *Globe Hardware Co.*, 14 Ariz. 397, 129 Pac. 1104; 27 Cyc. 82, subd. 6; 8 Cyc. 1006.

Judgment is affirmed.

FRANKLIN and CUNNINGHAM, JJ., concur.