[Civil No. 2864. Filed May 19, 1930.]

[288 Pac. 3.]

C. W. NORTON, W. F. NORTON, JOHN STANLEY and LOUISE NORTON (Substituted in Place of NORTON LAND & CATTLE COMPANY, a Corporation), Appellants, v. ALBERT STEIN-FELD and JOHN B. WRIGHT, Appellees.

Messrs. Curley & Pattee, for Appellants.

Messrs. Kingan & Darnell and Mr. Francis M. Hartman, for Appellees.

McALISTER, J.—This action was brought by the Norton Land & Cattle Company, a corporation, on February 26th, 1926, against Albert Steinfeld to recover damages in the amount of $199,937.87 for an alleged breach of guarantee, but some time after it was filed the corporation was dissolved and its stockholders, except one, John B. Wright, who was made a defendant, were substituted as plaintiffs. Judgment was rendered in favor of the defendant and the plaintiffs have appealed.

It appears that in June, 1920, the Norton Land & Cattle Company, hereinafter called the Company, sold to N. C. Bernard and William Bernard for $245,000 twenty-one hundred acres of land, its leasehold interest in 61 sections of state land, 3,100 head of cattle, 100 head of horses and mules, and other personal property, all located in Pinal county, Arizona, and that only a small part of the consideration was paid in cash, the remainder being taken care of in this way: $90,000 by the purchasers agreeing to liquidate this sum in mortgages standing against the property; $33,000 by their executing a second mortgage on the

land in this amount; the balance by putting up as security therefor certain stocks and promissory notes. Not very long thereafter the Bernards became heavily indebted to the Consolidated National Bank of Tucson, an institution of which the defendant was the president and a large stockholder, and as a result of their embarrassed financial condition negotiations were had looking toward a resale and reconveyance of the property to the Company, but, due to range conditions at that time, it was unwilling to repurchase the property unless it was assured that it would have funds with which to run the business for three years and also guaranteed that the collection of the indebtedness against the property, which the Company would be compelled to assume in case of repurchase, would not be enforced within a like period of time. Hence, as an inducement to the Company to repurchase, it was alleged that the defendant, Albert Steinfeld, "personally guaranteed and agreed that the collection of said indebtedness should not be enforced by the owners or holders of such indebtedness, or any thereof, for said period of three years, and that such advancements would be made by the said Consolidated National Bank or by some other person or corporation, and that such repayment thereof would not be enforced for such period of three years"; that pursuant to this agreement the Bernards reconveyed the property to the Company October 1st, 1921; that the Company released a second mortgage of $33,000 on the real estate given it by the Bernards and allowed a third one held by the Consolidated National Bank to become a second mortgage, surrendered to the Bernards certain collateral they had turned over to it to secure part of the purchase price and expended in cash $16,000 of its own funds.

It was further alleged that in violation of this agreement and with the knowledge and approval of the defendant the Tucson Land & Cattle Company,

of which he was also president and a large stockholder, commenced in the superior court of Pima county, Arizona, an action to foreclose the chattel mortgages held by it on the personal property of the Company and in April, 1923, obtained judgment in its favor for more than $100,000; that an execution was issued and levied pursuant thereto and the property sold for $60,000, leaving a deficiency judgment against the Company of $68,899.87; that in January, 1923, the Consolidated National Bank and the Tucson Land & Cattle Company, both of which had theretofore loaned money to the Company, refused to advance it any additional funds and that in consequence of this it was unable to pay the interest then due on the first mortgage of $33,000 held by the Fidelity Savings & Loan Association on its real estate and that as a result of its failure to meet this interest the said Fidelity Savings & Loan Association declared the principal of its note and mortgage due, demanded payment, instituted foreclosure proceedings in March, 1923, obtained judgment foreclosing the mortgage lien and caused the real estate of the Company to be sold, and as a result thereof the Company lost all its property.

Among the defenses interposed by the answer is the plea that the action was barred by paragraph 711, Revised Statutes of 1913, Civil Code, in that the suit to foreclose the mortgage lien of the Fidelity Savings & Loan Association was filed on November 10th, 1922, and not in March, 1923, as alleged in the complaint, and that the filing of that action constituted a breach of defendant's guarantee that the collection of the indebtedness due by the Company would not be enforced for three years and set in motion the three-year statute of limitations which had run more than three years prior to February 26th, 1926, the date on which this action was instituted.

The matter was heard on the plea in bar and after the defendant had introduced in evidence the complaint, the summons and the decree in the case of the Fidelity Savings & Loan Association against the Company showing that that action was filed in the superior court of Pima county on November 10th, 1922, that service of summons was had three days later and that the decree was entered on March 28th, 1923, the court upheld the defendant's contention that the filing of this complaint was a breach of his guarantee, that it set in motion the statute of limitations and that this had the effect of barring plaintiffs' cause of action after three years from November 10th, 1922. Following this ruling judgment for the defendant was rendered and the plaintiffs have brought the case here for review.

There are eight assignments but they are each directed to the proposition that the court erred in holding that the defendant's contract was breached when the action to foreclose the mortgage of the Fidelity Savings & Loan Association was filed on November 10th, 1922, and that the effect of the filing of that action was to set in motion the statute of limitations. In support of this proposition appellants contend that the mere filing of the complaint of the Fidelity Savings & Loan Association did not breach appellee's guarantee but that this result followed only after a sale of the property under the judgment, for the reason that he could have performed his agreement any time before sale and as long as it remained within his power to do this he was not guilty of breaching it. If the commencement of the suit did constitute a breach of this agreement plaintiffs' cause of action accrued on November 10th, 1922, and is barred, since it was not instituted within three years from that date, but it is otherwise if the term, enforced collection, means the completed act.

It occurs to us that a proper construction of appellee's agreement leads to the conclusion that a mere filing of that action was not an enforcement of the collection of the indebtedness but only a start to enforce and that the importance and consequences of a completed enforcement could not attach thereto. There are a number of proceedings to be taken between the institution of an action and the termination of it, all of which take time, and necessarily it was impossible for the Company to know when the one in question was filed whether appellee would permit it to go to trial or have it dismissed, or whether he would allow it to go to judgment and pay the amount found due before sale thereunder. In either way could he have prevented the enforcement of collection and as long as this was within his power it cannot be said that he breached his guarantee. His agreement in substance was that the indebtedness would be carried three years and that he would stand between the Company and its creditors in so far as enforcing its collection was concerned but he did not guarantee that no action would be filed or that an *attempt* to enforce collection would not be made. The undertaking, therefore, was not breached until the property had been sold and the consideration paid, that is, until collection had been enforced.

Appellee argues, however, that if the guarantee were not breached by the filing of this suit but only by the sale under the judgment it was not breached until the period of redemption had expired since appellee had the right to redeem or advance the Company the funds for this purpose until this time had elapsed. This proposition, however, fails to take into consideration the fact that when the property was sold and the purchase price paid the collection of the indebtedness was thereby enforced and nothing appellee could have done after that could change this fact in the least. The judgment creditor had already re-

ceived his money and even though appellee had later offered to advance the Company funds with which to redeem the fact that the collection of the indebtedness had been enforced was in no way affected thereby; any rights that had come into being as a result thereof were fixed and could not be destroyed or defeated by subsequent acts of appellee unless, of course, they were agreed to by appellants. The act constituting the breach and resulting in the accrual of the cause of action and the setting in motion of the statute of limitations had already been committed, and a tender to the Company by appellee of the funds with which to redeem would not of itself have restored the condition existing prior to the breach or have arrested the running of the statute.

If appellee's guarantee had been that none of the Company's creditors would file suit for the collection of their indebtedness or *attempt* to enforce its collection for three years, appellants' cause of action would undoubtedly have accrued upon the commencement of proceedings by the Fidelity Savings & Loan Association but such was not his undertaking. Under the guarantee he made it was necessary that he fail to prevent the enforced collection of this indebtedness, not merely that he see to it that an action looking to that end should not be filed, before he could be held responsible for violating it. This being true, if appellants had treated the commencement of the action by the Fidelity Savings & Loan Association as a breach and immediately afterwards filed suit a general demurrer to the complaint would have been good, for the reason that there had been no breach, since it was within his power to perform his agreement any time before sale under execution by paying the mortgagee the amount due either before or after judgment. Until a breach had actually occurred there was nothing upon which appellants could base a suit and necessarily the statute of limitations could

not be set in motion prior to the accrual of a cause of action. It is elementary that "whenever one person may sue another a cause of action has accrued and the statute begins to run." 37 C. J. 810.

It being true, therefore, that this action was filed within less than three years from the date of the sale under the judgment in the foreclosure suit of the Fidelity Savings & Loan Association against the Company, appellants' cause of action was not barred by the statute of limitations and their contention to this effect should have been upheld.

This conclusion necessitates a consideration of the cross-assignments of appellee growing out of the ruling of the court denying his plea in bar based upon an order of the corporation commission suspending the right of the Norton Land & Cattle Company to do business in the state. It appears that for two years prior to January 29th, 1924, this Company failed to pay its annual registration fee and that on that date the corporation commission made an order declaring it defunct, inoperative and no longer competent to do business in the state; that no reinstatement was applied for by the corporation within six months from the date of this order or at all and that in March, 1926, the commission entered a second order declaring it legally dead and canceling its license to do business within the state. Both of these orders were issued pursuant to the provisions of section 6, chapter 36, Laws of 1923, reading as follows:

"Section 6. Whenever the Corporation Commission after hearing shall find that any corporation has failed for a period of two (2) years to pay the annual registration fee as required by law, or to file the annual report as required by law, or either or both, it shall forthwith issue a decree or order declaring such corporation to be defunct and inoperative and no longer competent to transact business within the State of Arizona.

"Provided, that any such defunct corporations, upon the payment of all such delinquent fees together with the costs of such action shall thereupon become reinstated, revived and operative again: Provided, further that where such reinstatement is not applied for within six months from date of such order or decree, the Corporation Commission shall declare by order or decree that such defunct and inoperative corporation is legally dead, and its certificate of incorporation or license to do business within the State of Arizona shall be revoked, cancelled, and annulled, and the records of the Corporation Commission made to so indicate."

The corporation started this action in February, 1926, two years after the first decree and one month before the second, and appellee contends that at that time it had no existence in law, that in consequence of this there was no suit pending October 1st, 1928, when by order of court appellants, its stockholders, were substituted as parties plaintiff, and, hence, that the order permitting them to be such parties in the corporation's stead was in effect allowing the commencement of a new action on that date. This position is based upon the proposition that while the Company following the order of January 29th, 1924, was still a corporation it was not competent to transact business, that it had no power to exercise any of its rights, including the right to sue, and that upon the expiration of the six months in which it could have applied for reinstatement without its having done so it ceased to exist, except technically, and any right it had passed at that time to its stockholders, regardless of the fact that the commission did not then issue the second order declaring it dead.

The first decree suspended the Corporation's right to transact business until it paid its annual registration fee but did not deprive it of its existence. The second decree, however, had this effect, provided the

passing of the six months following the first decree together with the failure of the corporation during this time to apply for reinstatement had not already brought this about. However, it is unnecessary to determine whether the corporation still had life following the expiration of this period and prior to the issuance of the second decree, because there was no error in permitting the substitution of its stockholders as parties plaintiff even though it did not then exist as a legal entity. The rule is that upon the dissolution of a corporation its property passes to its stockholders subject, of course, to the rights of its creditors, *Smyth* v. *Kenwood Land Co.,* 97 Or. 19, 190 Pac. 962; *Gardiner* v. *Automatic Arms Co.,* (D. C.) 275 Fed. 697, and while, this being true, its stockholders were the proper parties to bring a suit after it had ceased to exist, even upon a cause of action which had accrued before its right to do business had been suspended, yet one commenced in its name, even though it no longer had life, upon the theory that it still existed since the decree dissolving it had not then been issued, or for some other good cause, is not a nullity, but sustains the action to the extent that an amendment substituting the real parties in interest, the stockholders, as plaintiffs may be made. "It is usually regarded as permissible to substitute as plaintiff the person who has the right to sue," according to 31 Cyc. 485, "where an action has been brought originally in the name of one having no right, in case the cause of action and the amount of recovery remain the same, and defendant is deprived of no defense available to him at the beginning of the suit." The relief sought and the liability for which appellee was called to answer were the same whether the corporation or the stockholders were the plaintiffs and the substitution deprived appellee of no defense that was available to him before it was made. In *Weeke's Grain & Live Stock Co.* v. *Ware*

& *Leland,* 99 Neb. 126, 155 N. W. 233, it was held under a statute permitting amendments no more liberal than paragraph 422, Revised Statutes of 1913 (Civ. Code), of this state, that an action brought in the name of a corporation after its charter had been forfeited for the nonpayment of an occupation tax could be amended by making its managing officers the plaintiffs, the court stating that the proceedings in the name of the corporation were not void in the sense that the complaint could not be amended so as to allow the proper parties to maintain the action. See, also, *Sullivan Const. Co.* v. *Twin Falls Amusement Co.,* 44 Idaho 520, 258 Pac. 529; *Paola Town Co.* v. *Krutz,* 22 Kan. 725; *Reardon* v. *Balaklala Consolidated Copper Co.,* (C. C.) 193 Fed. 189; *Lehl* v. *Strong Mercantile Co.,* 82 Colo. 343, 259 Pac. 512.

The right to amend the complaint, even after verdict in an action brought under the Employers' Liability Law (Civ. Code 1913, pars. 3153–3162) in the name of the administrator of the deceased, who under the law had no authority to sue, by substituting the parents, the proper parties, was considered at length by this court in *Bryan* v. *Inspiration Consolidated Copper Co.,* 23 Ariz. 541, 205 Pac. 904, 908, and upheld upon the theory that the amendment neither changed the cause of action nor resulted in the substitution of a new one. The court said:

"The authorities upon this subject seem to be in hopeless conflict, but the more modern and reasonable rule, as well as that prevailing in the federal courts, seems to be that, unless there is some change in the cause of action or the substitution of some new cause of action, the amendment should be allowed, and the cause be permitted to be determined upon its merits."

That case is the same in principle as this one and is, therefore, controlling upon the question here presented.

In cross-assignment four appellee bases error upon the court's refusal to sustain the contention raised both by plea in bar and by demurrer that the contract sued on was oral and not to be performed within one year and, hence, within the statute of frauds and unenforceable. The contract, it is true, was oral and could not have been completely performed by appellee in less than three years, but the Company did all it agreed to do in return for appellee's guarantee immediately after entering into the agreement. It repurchased the property and accepted a reconveyance of it, released the second mortgage of $33,000 given by the Bernards which resulted in making the third mortgage, on the land given also by the Bernards to the Consolidated National Bank for $40,000 the second mortgage delivered to the Bernards and the Consolidated National Bank certain notes and stocks held as security, and expended $16,000 in the payment of back taxes and other obligations against the Company and in carrying on the business. This constituted complete performance on the part of the Company and, under *Diamond* v. *Jacquith,* 14 Ariz. 119, L. R. A. 1916D 880, 125 Pac. 712, had the effect of taking the agreement out of the statute of frauds. In that case the court stated fully its reasons for adopting this view and in *Kilbourn* v. *Marshall,* 24 Ariz. 63, 206 Pac. 785, reaffirmed it, hence it is unnecessary to do more than cite these cases which are controlling here. They answer the argument that the contract was not taken out of the statute of frauds by performance on the part of the Company and that in consequence of this recovery could be had only on *quantum meruit.*

There was no error in the rulings upon which the cross-assignments are based but the order sustaining the contention that the statute of limitations was set in motion by the mere commencement of the action of the Fidelity Savings & Loan Association

against the Company renders necessary a reversal of the judgment. It is so ordered.

LOCKWOOD, C. J., and ROSS, J., concur.