180 P.2d 219
## CITY OF PHOENIX v. ANDERSON.
### No. 4886.

Supreme Court of Arizona.

May 5, 1947.

Jack Choisser, City Atty., and William C. Fields, Asst. City Atty., both of Phoenix, for appellant.

V. L. Hash, of Phoenix, for appellee.

UDALL, Justice.

Jonnie Fae Anderson, a minor of the age of thirteen years, acting through her father as guardian ad litem, sued the City of Phoenix for $5,500 ($500 for medical expense and $5,000 for lessened earning power and pain and suffering) for injuries that she suffered when, on June 17, 1945, she fell from the high-dive platform at the swimming pool in University Park. The minor will hereafter be referred to as the plaintiff and the City of Phoenix as the defendant or City.

■■ The jury awarded the plaintiff a verdict in the sum of $500 and judgment was entered thereon. The City moved for a new trial which motion was denied by operation of law as the court failed to rule upon it within the statutory period. Sec. 21-1308, A.C.A.1939. Although the City's only appeal is from the judgment (as the notice of appeal does not include the denial of its motion for a new trial), plaintiff, and rightly so, does not urge too strongly the rule formerly laid down by this court in Gila Valley Copper Co. v. Gilpin, 14 Ariz. 564, 133 P. 98 and Arizona Eastern R. Co. v. Globe Hdwe. Co., 14 Ariz. 397, 129 P. 1104, that upon an appeal from a judgment only, the Supreme Court cannot look into the evidence. Plaintiff's counsel suggests, and it is the fact, that Sec. 21-1703 enlarges the scope of review by stating in part that: " * * * If a motion for a new trial was denied, the court may, on appeal from the final judgment, review the order denying the motion, though no appeal be taken from the order; on an appeal from a final judgment the Supreme Court shall not, however, consider the sufficiency of the evidence to sustain the verdict or judgment in an action tried before a jury *unless a motion for a new trial shall have been made."* (Emphasis supplied.)

Defendant makes two assignments of error. First, that the City in operating the public parks is performing a governmental function and hence is immune from tort liability arising therefrom. In view of the disposition that must be made of this case upon other grounds, it becomes unnecessary and would, in fact, be obiter dicta to here decide whether park operation is a governmental or proprietary function of the City. Second, defendant claims that the court erred in denying the City's motion for a directed verdict (made at the close of plaintiff's case and again at the close of all the evidence) for the reason that there was insufficient evidence to support the allegations of plaintiff as to the negligence of the City.

Specifically plaintiff's complaint charged that: (1) The City unskillfully and unsafely constructed the high diving platform in that there was provided no intervening network between the bannister or guard rail and the platform itself to protect persons who might be thrown against this rail from falling through it which caused the diving platform to be unsafe and unfit for use. (2) The City negligently failed to have guards, though admittedly present, sufficiently regulate the conduct of the children upon the diving platform.

The crucial question then becomes whether under any theory advanced by plaintiff and supported in law, the City was remiss in its duty to provide a proper high-dive platform and to regulate the use thereof for the safety of its patrons.

■ Even if the maintenance of the pool in question be a proprietary function of the City as the plaintiff contends, and

which we cannot here decide, the City would be bound to exercise only a reasonable standard of care in its operation. Dillow v. City of Yuma, 55 Ariz. 6, 97 P.2d 535; Rush v. City of Globe, 56 Ariz. 530, 109 P.2d 841, 38 Am.Jur. 263, 303, 43 C.J. 921 and ff.; Ramirez v. City of Cheyenne, 34 Wyo. 67, 241 P. 710, 42 A.L.R. 245; City of Sapulpa v. Young, 147 Okl. 179, 296 P. 418; Paraska v. Scranton, 313 Pa. 227, 169 A. 434.

Plaintiff, in his brief, quotes a portion of the opinion from Collins v. Riverside Amusement Park Co., 61 Ariz. 135, 145 P. 2d 853, which portion is, in turn, a quotation from Larkin v. Saltair Beach Co., 30 Utah 86, 83 P. 686, 690, 3 L.R.A.,N.S., 982, 116 Am.St.Rep. 818, 8 Ann.Cas. 977, to the effect that proprietors of bathing resorts are subject to still a higher standard of care. The Utah case itself carefully limits this rule by stating that: " * * * the law imposes upon them (operators of bathing resorts) the additional duty, when the character and conditions of the resort are such that because of deep water or the arising of sudden storms * * * the bathers may get into danger, of having in attendance some suitable person with the necessary appliances to effect rescues, and save those who may meet with accident. * * *"

This additional duty or higher standard of care then is actually that lifeguards and lifesaving equipment be provided. In the case at bar it was neither alleged nor was it the fact that these were not present, and by the nature of the accident that occurred, there would be no occasion for this question to arise. In regard to other matters in the operation of a bathing resort even as a proprietary function, the Utah case well supports the rule that the standard required of the proprietor is that of reasonable care.

To dispose of this second assignment of error it becomes necessary to review the evidence, taking it, as we must, in the light most favorable to plaintiff, the successful litigant in the court below. Matter of the Estate of George H. McDonnell, 65 Ariz. 248, 179 P.2d 238.

The evidence shows that the diving apparatus consists of a metal framework or tower supporting a high diving board. The board is reached by a perpendicular metal ladder attached to the tower, the distance from the cement deck of the pool to the diving board being nine feet two inches. A guard rail or bannister made of two-inch metal piping stands some three feet above the platform and surrounds three sides of the anchored end of the board.

Throughout the entire trial plaintiff made no attempt to prove that this structure was, in fact, hazardous for the purpose for which it was built, or that any of the customary safeguards had been omitted in its erection. No attempt was made to rebut the fact that this type of high div-

314

ing tower with its guard rail is, in fact, the standard equipment of playground apparatus manufacturers and is customarily used in public pools throughout the United States. As a matter of fact, plaintiff, by her own allegation, claims that she was "thrown" against the railing which bespeaks more of defective conduct than defective equipment.

In regard to the supervision of the children in their use of the board, the evidence conclusively shows, and it is not denied, that two or more lifeguards were present at the pool at the time of the accident trying to regulate the conduct of the children in the pool and on the board. However, as the City provides an additional guard for each 150 patrons, it is naturally not possible for these guards to keep their eyes upon every one at once.

Further uncontradicted facts gleaned from the record show that plaintiff was a skilled swimmer, a member of the Park swimming team, and that she was thoroughly familiar with and had frequently used the high board in question. At the time of plaintiff's injury there were present conspicuously posted signs advising that the use of the diving apparatus was at the patron's own risk; that no loafing or scuffling was allowed; and that not more than three persons were to be on the platform at any one time. In spite of this plaintiff was presently engaged in a game of "tag", scuffling on the diving platform with four older boys. She had been re-

peatedly warned, along with the other children, not to play the game of "tag" on the high dive and the last warning was, in fact, just fifteen minutes prior to the accident. Yet, contrary to all rules and instructions, plaintiff was playing "tag" on the board during the course of which game she was accidentally struck by one of her playmates, causing her to lose her balance and fall to the cement deck of the pool below, breaking one arm at the wrist and the other at the elbow.

■ On such a record we feel that the learned trial judge erred in not granting the defendant's motion for an instructed verdict. It is crystal clear that plaintiff has only herself to blame for the injuries complained of, and the City should not be mulcted in damages as a result thereof. Even if the City be operating this park in its proprietary capacity and be thereby held to a standard of reasonable care, there is no evidence of negligence sufficient to justify a verdict against it.

"It is, of course, the invariable rule of this court that, where there is a dispute in the evidence from which reasonable men could arrive at different conclusions as to the ultimate facts, we will not disturb the findings of the trial court or the verdict of a jury because we do not agree with the conclusion reached. On the other hand, if there is no evidence in the record which would justify such a conclusion by the triers of fact, it is not only our right, but our duty, to set aside a verdict."

Spain v. Griffith, 42 Ariz. 304, 25 P.2d 551. See also Rouillier v. A. & B. Schuster Co., 18 Ariz. 175, 157 P. 976; State Tax Comm. of Arizona v. Magma Copper Co., 41 Ariz. 97, 15 P.2d 961.

Judgment reversed.

STANFORD, C. J., and LaPRADE, J., concurring.