198 P.2d 590

**MORRISON v. ACTON.**

No. 4946.

Supreme Court of Arizona.

Oct. 25, 1948.

Blaine B. Shimmell and Louis McClennen, both of Phoenix, for appellant.

Howard Gibbons, Herbert Watson and W. H. Chester, all of Phoenix, for appellee.

UDALL, Justice.

John T. Acton, as plaintiff, sued to recover damages, both actual and punitive, for the alleged malpractice of Dr. Norman H. Morrison, the defendant herein. In accordance with the verdict of a jury, judgment for actual damages in the sum of one thousand dollars was entered in favor of the plaintiff, and after denial of the defendant's motion for a new trial this appeal was taken. The parties will be referred to as they were designated in the lower court.

The case was here before on appeal from an order granting defendant's motion to dismiss the action upon the ground that the two year statute of limitations had run, Acton v. Morrison, 62 Ariz. 139, 155 P.2d 782. The issues framed by the pleadings are therein carefully detailed and will not be repeated here except in so far as may be necessary. The former decision is the law of the case to the extent of determining that the complaint stated a good cause of

action and was not vulnerable to a motion to dismiss either for failing to state a claim upon which relief could be granted or because the action was barred by limitation.

On this appeal the defendant assigns as error the lower court's denial of his motion for an instructed verdict as well as its refusal to grant his motion for a new trial. The basis for each motion is that there was no evidence, or at least that the evidence was wholly insufficient, to sustain the judgment in that the plaintiff had not established either negligence or proximate cause, nor had fraud or concealment been proved so as to toll the statute of limitations. As this appeal challenges the sufficiency of the evidence to sustain the judgment, it is our duty in determining the matter to consider the evidence in the light most favorable to the plaintiff. This rule is succinctly stated in the case of Stewart v. Schnepf, 62 Ariz. 440, 158 P.2d 529, 531:

" * * * These applicable principles are that upon an appeal from a judgment and order denying a motion for a new trial, all reasonable inferences which may be drawn from the evidence supporting the judgment and order appealed from will be so drawn and applied; that all conflicts in the evidence will be resolved in favor of the appellees; and all evidence in the record, unless inherently impossible or improbable, supporting the judgment and order appealed from, is taken as true. (Citing cases) * * * 'Where evidence is of such a nature that either of two inferences may be drawn therefrom, we are bound by the one chosen by the trial court.' (Citing cases.)"

The policy embodied in this rule has been consistently followed in the more recent decisions of this court. See Seargeant v. Smith, 63 Ariz. 466, 163 P.2d 680; Gillespie Land & Irrigation Co. v. Jones, 63 Ariz. 535, 164 P.2d 456; In Re McDonnell's Estate, 65 Ariz. 248, 179 P.2d 238; City of Phoenix v. Anderson, 65 Ariz. 311, 180 P. 2d 219.

Construing the evidence in this light, we shall, at the outset, chronologically summarize that which tends generally to support plaintiff's cause of action before proceeding to point out the particular proof tending to sustain those allegations of the complaint which the defendant claims are without support.

The plaintiff during either the month of July or August of 1935 consulted the defendant, a regularly licensed and practicing dentist in the city of Phoenix, relative to the removal of plaintiff's two lower imbedded wisdom teeth. After x-rays were taken by Dr. Morrison, the lower left third molar (wisdom tooth) was first removed in an operation which lasted some two hours and thirty-five minutes, and which involved cutting this tooth in two twice with a drill to facilitate its removal. While the plaintiff was unaware of any untoward incident in connection with the operation, he did testify that there seemed to be considerable

trouble in effecting the tooth's removal, and that some twenty-nine days elapsed before the gum grew over and healed. During this time the plaintiff remained under the defendant's care. Shortly after this first extraction the defendant successfully removed the other wisdom tooth, from which normal recovery was had, the healing taking place within about two weeks. Though no x-rays were taken by the defendant following the removal of the teeth, it was established by the other doctors who testified that, unless there was an apparent reason for doing so, standard practice would not require that this be done. The plaintiff testified that following the operations a little swelling and soreness would be present now and then, at intervals of from four to six months, in his lower left jaw where the first tooth had been extracted. Thinking, as Dr. Morrison had suggested after the operation, that a piece of chipped bone was causing the trouble, he went back to the defendant in the year 1938 or 1939. The doctor then x-rayed all of his teeth and jaw and gave him the films, telling him that there wasn't anything there that should give him any trouble. The plaintiff had not been to any other dentist subsequent to the operations nor had defendant been consulted until then. Following the operations plaintiff's health became impaired. He began to get rheumatism, he suffered soreness in his joints and the hearing in his left ear was seriously affected. In total effect his condition became such that he was unable to

do his usual work, and he had to lay off a lot of the time. He estimated that he lost in all approximately 300 laboring days. The evidence is uncontradicted that during this period plaintiff went to several different medical doctors trying to discover the nature of his trouble, that they informed him that there was an infection some place Upon plaintiff's complaint of back trouble, but they could not determine where it was. x-rays of his back were taken by Dr. Lytton-Smith in April, 1940. This doctor prescribed heat, massage and strapping of the back, and this treatment seeming to afford plaintiff relief, he was discharged. Finally, in December, 1941 or January, 1942, while he was living in the Casa Grande area, after his gums had swollen up, abscessed, and the abscess had broken the plaintiff went to Dr. Knower, a dentist practicing at Casa Grande, who proceeded to x-ray the afflicted area where the left lower wisdom tooth had previously been removed. It was then and not until then that plaintiff learned that there was a piece of metal imbedded in the jawbone in that area, and that another small metallic particle lay externally to the bone opposite the second molar tooth region. Dr. Knower advised the plaintiff that the removal of these foreign bodies was a job for a specialist and recommended Dr. Charles E. Borah of Phoenix. This advice was followed and in January of 1942 Dr. Borah skillfully removed the object imbedded in the jawbone. The plaintiff in answer to a question as to what procedure Dr.

Borah followed stated that the doctor first x-rayed the jaw so as to see where he wanted to work, that thereafter the doctor would work a little while and then x-ray it again, taking in all about a dozen pictures, that "he removed that drill and laid it right on the table right there in front of me", that the witness saw him take it out, and that this metallic object (which was admitted in evidence) had been in his possession ever since. Dr. W. Warner Watkins, who was appointed by the court a few days prior to the trial to examine the plaintiff and the exhibits, testified and also submitted a written report which was admitted in evidence. He described the metallic object removed by Dr. Borah as measuring four mm. in length and one mm. in width, being slightly narrow in the central portion and slightly expanded at each end. The other foreign object observed by Dr. Watkins from x-rays taken by him was shown to be external to the bone of the lower jaw and evidently in the soft tissues of the gum opposite the root of the second molar. He stated that this was a metallic body of some sort about one-quarter of an inch long and perhaps one-thirty second of an inch in diameter, his conclusion as to this particular object being that it should not be causing any symptoms nor should it present any danger of future developments. This object has never been removed.

The complaint in the instant suit was filed on May 21, 1942, but, doubtless in part by reason of the delay incident to the first appeal, the case did not come on for trial until May 3, 1946. No question is raised by the assignments of error as to any rulings of the court on the admission or rejection of evidence nor is it claimed that the jury were misled by any erroneous instructions given them. The only witnesses called to testify were the plaintiff and the four doctors heretofore named, the defendant himself not being called. There had been a considerable lapse of time between the trial and the occurrences herein recited and both doctors Knower and Borah testified that their records of any work done for plaintiff Acton, if such records had been originally made, had either been destroyed or misplaced. Both however identified cancelled checks which plaintiff had given them for services rendered, though it would appear from a reading of their testimony that they were somewhat reluctant to testify.

The gravamen of plaintiff's cause of action is negligence by the defendant in the extraction of the lower left impacted wisdom tooth, and the defendant's subsequent concealment of the true condition of the jawbone and gum in that immediate area.

The defendant knew, or by the exercise of reasonable diligence should have known, that the instruments used by him had broken off during the operation, and the failure to recognize that this had happened is regarded as malpractice. Ernen v. Crofwell, 272 Mass. 172, 172 N.E. 73, 69 A. L.R. 1140; Burton v. Tribble, 189 Ark. 58, 70 S.W.2d 503. See also the annotation be-

ginning at page 1142 of 69 A.L.R.. Under such circumstances good practice would have dictated the taking of another x-ray picture which would have disclosed the true condition, and by an immediate correction thereof, all of the subsequent difficulties encountered by the plaintiff would have been prevented. Dr. Borah testified that the objects with which we are here concerned would have been readily observable in an x-ray taken of the area.

■ In response to this question propounded by the trial court, "* * * if a piece of metal is left in the jaw of a patient after the removal of a tooth, does such a practice conform with the standard, the ordinary standard of the practice of dentists in the community in which you practice?" Dr. Knower replied, "I am the only one down there, so it is not a common practice to do that with me if I can prevent it. It has happened perhaps even with me". But Dr. Borah in response to a similar question asked him by the court gave an unequivocal answer of "No Sir". Thus there was supplied affirmative evidence of a violation of standards of medical practice essential to the sustaining of a verdict in a malpractice case. Butler v. Rule, 29 Ariz. 405, 242 P. 436; Boyce v. Brown, 51 Ariz. 416, 77 P.2d 455. While these cases involve medical doctors the same rule applies to dentists. Acton v. Morrison, supra, and Batty v. Arizona State Dental Board, 57 Ariz. 239, 112 P.2d 870.

■■ In addition to establishing the defendant's negligence, it was also incumbent upon plaintiff to prove that this negligence was the proximate cause of his injury. Both negligence and proximate cause are however questions of fact for the jury if the evidence is of sufficient weight and character to warrant their submission.

■■ Dr. Borah, who is both a medical doctor and a dentist, stated that if a foreign body is acting as an irritant and there is some disturbance from which the patient could be getting absorption this could be a possible source of infection. He stated that he did not believe that the presence of a foreign body such as that involved in this case could cause rheumatism, but that it might contribute to it. It would seem to be more than a mere coincidence that all of the plaintiff's physical ailments heretofore set forth occurred subsequent to the extraction of his wisdom teeth by defendant, and that within five or six months after the small metallic object had been removed by Dr. Borah he began to recover; he slept better, the soreness left his joints, and his impaired hearing cleared up and bothered him no longer. The plaintiff was not required to exclude all other possible causes of his illness. Vigneault v. Dr. Hewson Dental Co., 300 Mass. 223, 15 N.E.2d 185, 129 A.L.R. 95. At the time of trial plaintiff had completely recovered from the effects of his illness, and upon his motion there was stricken from the complaint the allegations as to the perma-

nent impairment of his earning capacity. Before going to Dr. Knower he had his tonsils removed as a possible source of infection but this afforded no relief whatsoever. No other probable cause of his sickness was even suggested. The supreme court of California, in the case of Barham v. Widing, 210 Cal. 206, 291 P. 173, 177, well said:

"* * * Because of the very subtleness of the origin and development of disease, less certainty is required in proof thereof. As the court says in the case of Dimock v. Miller, 202 Cal. 668, 671, 262 P. 311, 312:

" 'If * * * it is necessary to demonstrate conclusively and beyond the possibility of a doubt that the negligence resulted in the injury, it would never be possible to recover in a case of negligence in the practice of a profession which is not an exact science.'

"It is not necessary in the trial of civil cases that the circumstances shall establish the negligence of the defendant as the proximate cause of injury with such absolute certainty as to exclude every other conclusion. It is sufficient if there is substantial evidence upon which to reasonably support the judgment. Ley v. Bishopp, 88 Cal. App. 313, 316, 263 P. 369."

See also Mastro v. Kennedy, 57 Cal.App. 2d 499, 134 P.2d 865; Whetstine v. Moravec, 228 Iowa 352, 291 N.W. 425. All of the cases just cited were malpractice suits. A similar rule has been laid down by this court in personal injury suits. Arizona Bing-

hampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P. 538, 44 A.L.R. 881; Atchison, T. & S. F. R. Co. v. Hicks, 64 Ariz. 15, 165 P. 2d 167; Apache Railway Co. v. Shumway, 62 Ariz. 359, 158 P.2d 142, 150, 159 A.L.R. 857, wherein we said:

"* * * All that is required in negligence cases is for the plaintiff to present probative facts from which negligence and the casual relation may be reasonably inferred * * *".

It should be kept in mind that plaintiff's testimony, that prior to the extractions by Dr. Morrison no other dentist had ever worked on his teeth in that area of his mouth, nor had anyone subsequent thereto worked on same up until the time that he visited Dr. Knower, stands uncontradicted. Considering all of the testimony heretofore recited, coupled with the reasonable inferences to be drawn therefrom, we are of the opinion that the evidence was amply sufficient to justify the learned trial court in submitting the case to the jury. We also hold that the evidence fully sustains the implied finding of the jury that it was through the negligence of the defendant that these two foreign metallic substances became imbedded and were left in plaintiff's left jaw, and that this negligence was the proximate cause of the injuries which plaintiff sustained.

Finally we consider the question presented whether or not this action is barred by the statute of limitations. Had plaintiff known of the existence of the conditions

upon which his action is founded, it would have been necessary for him to have brought the action sometime in the year 1937, for, it being an action for "* * * Injuries done to the person of another * * *", the two year statute of limitations, Sec. 29-202, A.C.A.1939, would have applied. Many jurisdictions apply the harsh rule that the limitations statute commences to run from the date of the wrongful act or omission, rather than from the date of the damage caused. See Conklin v. Draper, 229 App.Div. 227, 241 N.Y.S. 529; Weinstein v. Blachard, 109 N.J.L. 332, 162 A. 601; Gangloff v. Apfelbach, 319 Ill.App. 596, 49 N.E.2d 795; Anno. 74 A.L.R. 1317, 1318 (II). Another group of courts holds that where there is a continuance of treatment after act or omission causing injury, the limitations period does not begin to run until the treatment ceases, and this upon the theory that where the tort is continuing the right of action is also continuing, as respects time when cause of action accrued. Hotelling v. Walther, 169 Or. 559, 130 P.2d 944, 144 A.L.R. 205; Annotation 74 A.L.R. p. 1322. But neither of these theories would be of aid to plaintiff in the instant case for the reason that there was no continuance of treatment and more than two years had elapsed since the extractions. This court, however, adopted a rule which we believe is far more consonant with justice in the decision rendered on the first appeal of this case, Acton v. Morrison, supra, wherein plaintiff's allegations of fraud and concealment were held sufficient to toll the running of the statute until the date of discovery of the fraudulent conduct. Does the proof sustain these allegations?

In addition to the facts heretofore recited, the evidence discloses that very shortly after the operation in the year 1935 which affected the removal of his lower left wisdom tooth the plaintiff became quite concerned over the length of time it was taking that area to heal, and that he asked the defendant about it, the latter replying that "* * * he had a hard job getting it out, and the bone might be chipped, or something, there." As heretofore stated the plaintiff did not again return to the defendant until the year 1938 or 1939, at which time he informed the doctor of his troubles, particularly as to the periodic swelling of his gums. The defendant then x-rayed all of his teeth and jaw and told him tha there wasn't anything there that would give him any trouble. The plaintiff was given the x-rays and he took them out of the office with him. The record is silent as to what eventually became of these pictures, we know only that they were not produced at the trial. Plaintiff further testified that until he went to Dr. Knower in December of 1941 or January of 1942 he had completely relied upon the representations made to him by the defendant that there was nothing about his jaw that should cause him trouble. The defendant here, as set out heretofore, knew or was

chargeable with knowledge of the breaking of his instruments, and the great probability of their lying within the jaw and gums of the plaintiff. Ernen v. Crofwell, supra. Under the circumstances as shown by the record in this case, any conduct other than immediate action by the dentist either to remove the broken parts of his instruments or to alleviate the condition so as to prevent any harmful consequences, or full and frank disclosure to the patient of the true facts so as to enable the latter to take steps to correct the condition was fraudulent concealment amounting to legal or constructive fraud.

"* * * Constructive fraud * * * may be defined as a breach of legal or equitable duty which, irrespective of the moral guilt or intent of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud * * *". Bell v. Bell, 44 Ariz. 520, 39 P.2d 629, 637.

Constructive fraud arises out of a fiduciary or confidential relationship. In re McDonnell's Estate, supra. For other Arizona cases on this point see Harrison v. Roark, 31 Ariz. 73, 250 P. 367; Tom Reed G. M. Co. v. Mining Co., 39 Ariz. 533, 8 P. 2d 449. Also see 37 C.J.S., Fraud, § 2(c). Such non-action and non-disclosure as was present here was a clear breach of the close confidential relationship which of necessity exists between dentist and patient. We quote from Acton v. Morrison, supra [62 Ariz. 139, 155 P.2d 784] :

"The relation existing between the plaintiff and defendant was confidential, calling for frank and truthful information from the dentist to his patient, and he, in keeping from his patient knowledge of the true condition of his jaw and teeth, violated a very sacred duty he owed him."

The text statements in 37 C.J.S., Fraud, § 16d and 35a are also helpful in this regard. Fraud and deceit may arise from silence where there is a duty to speak the truth, as well as from the speaking of an untruth. We hold, then, that there was sufficient evidence to sustain the jury's implied finding of fraud.

The legal or constructive fraud which was present in this case continued in effect during the time subsequent to the operation upon plaintiff by Dr. Morrison up to and until the time the plaintiff became apprised of the true condition existing within his mouth, or by the exercise of reasonable diligence should have learned the cause of his illness. Until plaintiff's visit to Dr. Knower in 1941 he was unaware of the presence of the metal in his jaw. He had endeavored to ascertain the cause of his illness on many occasions, and he had consulted several medical doctors without success. Plaintiff's reliance upon the statements hereinbefore quoted, made to him by

Dr. Morrison in 1935 and 1938 or 1939, in regard to the condition of his jaw constituted sufficient reason for not consulting another dentist in regard to any swelling which had been periodically reoccurring. No knowledge of the source of his infection could be imputed to the plaintiff from his receipt and possession of the x-rays taken by the defendant at this latter time, for he as an ordinary layman was devoid of any degree of the skill necessary to a proper reading and interpretation of these films. We quite agree with the view expressed by the trial court that the plaintiff was not required to incur further expense by going to other doctors to have the x-rays read.

It cannot be said under these facts that the plaintiff-patient should be penalized *for failing for even this long period of time* to discover the true seat of his troubles. As this action was instituted by the plaintiff within six months after his discovery of the true facts which constituted his cause of action, the case falls within the rule set out in the former decision handed down in this case, and is not barred by the statute of limitations.

" '* * * We hold, therefore, that fraudulent concealment by one occupying a position of trust tolls the running of the statute of limitations until the other party discovers or is put upon reasonable notice of the breach of trust, regardless of the form of the action. We think this rule is both reasonable and just. * * *' " Acton v. Morrison, supra. See Taylor v. Betts, 59 Ariz. 172, 124 P.2d 764; 54 C.J.S., Limitations of Actions, § 206.

Judgment affirmed.

STANFORD, C. J., and LaPRADE, J., concur.