898 P.2d 964

**GUST, ROSENFELD & HENDERSON,
an Arizona partnership,
Plaintiff/Appellee,**

v.

**The PRUDENTIAL INSURANCE COM-
PANY OF AMERICA, a New Jersey cor-
poration, Defendant/Appellant.**

No. CV–94–0098–PR.

Supreme Court of Arizona,
En Banc.

June 22, 1995.

Beus, Gilbert & Morrill by Martin A. Aronson and Anthony H. Misseldine, Phoenix, for plaintiff/appellee.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth and Beshears by Jeffrey B. Smith and Christopher Robbins, Phoenix, for defendant/appellant.

## OPINION

MOELLER, Vice Chief Justice.

### STATEMENT OF THE CASE

This is a breach of contract action arising out of a written lease for space in the building formerly known as the Valley Bank Center in Phoenix. Plaintiff law firm Gust, Rosenfeld & Henderson ("Gust") entered into the lease with Valley Bank Building, Inc., a wholly owned subsidiary of Valley National Bank (VNB). Gust filed this action against VNB's successor, Prudential Insurance Company.

The primary issue on appeal is whether the statute of limitations bars Gust's claim. The trial court applied the "discovery rule" and concluded that whether the claim was barred was a disputed issue of fact. The jury returned a verdict in favor of Gust. The trial court entered judgment accordingly, and the court of appeals affirmed in an unpublished, memorandum decision. Because Arizona law is unclear concerning the propriety of using the "discovery rule" in breach of contract cases, we granted Prudential's petition for review on that issue only. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and Ariz.R.Civ.App.P. 23. For reasons stated below, we affirm.

### FACTS AND PROCEDURAL HISTORY

Gust leased space in the Valley Bank Center in 1972. One provision of the lease, which was actually included in a letter that the leasing agent sent to Gust along with the lease itself, reads:

In addition, if the general rental rate structure for space equivalent to that which you are leasing shall fall below the rental provided for in the lease, your rental will be adjusted accordingly. This would also include monies available for above "building standard" construction. I will also advise you of any material changes in *the standard lease form and other items* which might effect [sic] your total expense in relation to other tenants who occupy equivalent space in the building, and pass any such benefits on to you up until the building is 85% occupied.

Given the resolution of disputed facts below on issues not now before this court, this "most favored nation" clause entitled Gust to receive as good a ·deal on rent and other allowances as any tenant who signed a lease at any time up until the building was eighty-five percent occupied.

Later in 1972, the landlord entered into a written lease with another law firm tenant, Snell & Wilmer ("Snell"), which contained terms more advantageous than those in Gust's lease with regard to remodeling allowance, carpet replacement provisions, and lease rental rates in years sixteen through twenty of the lease term. In 1974, VNB sold floors fourteen through thirty-four of the Valley Bank Center to defendant Prudential, which assumed VNB's obligations under the leases. Those floors include Gust's offices.

In August 1975, Mr. Devans Gust of the Gust law firm heard from a Snell lawyer that Snell had been asked to waive the most favored nations clause contained in Snell's lease. As a result of this conversation, Mr. Gust wrote to the building's leasing agent, Cushman & Wakefield, and asked if anything had occurred that would invoke Gust's most favored nation clause. The leasing agent replied that it had not violated Gust's most favored nation clause and that it never would.

Gust learned of Snell's more favorable lease in 1989 and filed this lawsuit shortly thereafter. Prudential moved for summary judgment alleging, among other things, that Gust's claim was barred by the six-year statute of limitations applicable to contract actions. *See* Ariz.Rev.Stat.Ann. (A.R.S.) § 12–548 (1992). In denying the motion, the trial

court applied the rule that a cause of action does not accrue until a plaintiff discovers or should have discovered by reasonable diligence that he or she has been injured—the so-called "discovery rule." The trial court also held that it was a disputed issue of fact whether Gust knew or reasonably should have known of the breach more than six years before filing its claim.

At trial, Prudential again raised the statute of limitations in its motions for directed verdict, which the trial court denied. The trial court sent the case to the jury with instructions on the discovery rule, and the jury determined that the statute of limitations did not bar Gust's claim. It also found for Gust on the merits. In accordance with the jury's verdict, the trial court entered judgment for approximately $500,000 in damages and awarded approximately $70,000 in attorneys' fees. Prudential moved for judgment notwithstanding the verdict and for a new trial, challenging the trial court's rulings concerning the discovery rule. The trial court denied the motions.

Prudential appealed, and the court of appeals affirmed in a memorandum decision. Although Prudential's petition for review raised several issues, we granted review on only one issue.

## ISSUE

The issue is whether the discovery rule can apply to breach of contract actions. We hold that it can.

## DISCUSSION

The parties agree that the applicable statute of limitations is A.R.S. § 12–548, which allows a party to sue for breach of a written contract "within six years after the cause of action accrues." For purposes of resolving this issue, the parties agree that Valley National Bank breached the lease agreement in 1972 when it gave another tenant, Snell, a lease with terms better than Gust's. The parties dispute when Gust's claim "accrued" and, thus, when the statute of limitations began to run. Prudential argues that the discovery rule does not apply to this breach of contract action and that, as a matter of law, Gust's claim accrued when the breach occurred in 1972. Gust argues that the discovery rule applies and that the claim accrued when Gust knew or should have known by exercise of reasonable diligence that it had been injured. We hold that the trial court correctly applied the discovery rule.[1]

As a general matter, a cause of action accrues, and the statute of limitations commences, when one party is able to sue another. *Sato v. Van Denburgh*, 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979); *Norton v. Steinfeld*, 36 Ariz. 536, 544, 288 P. 3, 5 (1930). The traditional construction of that rule has been that the period of limitations begins to run when the act upon which legal action is based took place, even though the plaintiff may be unaware of the facts underlying his or her claim. *See Stockmen's State Bank v. Merchants' and Stockgrowers' Bank*, 22 Ariz. 354, 363–64, 197 P. 888, 892 (1921). In an effort, however, to mitigate the harshness that the traditional rule was capable of inflicting on a plaintiff who did not know of the breach, courts have developed an exception. Under the "discovery rule," a plaintiff's cause of action does not accrue until the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause. 2 Calvin W. Corman, *Limitations of Actions* § 11.1.1 (1991).

In tort cases, Arizona courts were early in recognizing the equities behind the discovery rule. In 1932, this court held, in an action for trespass based on the unintentional, wrongful removal of underground ore, that

---

1. We have occasion to decide whether the discovery rule applies to the accrual of claims under section 12–548 only because the legislature has not. Subject to any applicable constitutional limitations, the legislature may determine whether the discovery rule should apply to accrual of claims under any particular statute of limitations. *See, e.g.*, A.R.S. § 47–2725(B) (1988) (A cause of action for breach of a contract for sale of goods accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach); A.R.S. § 47–2A506 (Supp. 1994) (A cause of action for default under a contract for lease of goods accrues when the act or omission on which the default or breach of warranty is based is or should have been discovered).

the statute of limitations did not commence until the plaintiff knew or reasonably should have known of the removal of the ore. *Tom Reed Gold Mines Co. v. United Eastern Mining Co.*, 39 Ariz. 533, 535, 8 P.2d 449, 450 (1932). The nature of the situation—the inherent opportunity to take the ore secretly—made it equitable to commence the limitations period upon discovery. *Id.* at 536–37, 8 P.2d at 450.

Similarly, this court held in 1948 that in a medical malpractice case where the injury was by nature difficult to detect, the statute of limitations did not begin to run until the plaintiff discovered the facts constituting his cause of action. *Morrison v. Acton*, 68 Ariz. 27, 36, 198 P.2d 590, 596 (1948). Our court of appeals expressly adopted the discovery rule in its current form in another medical malpractice case, *Mayer v. Good Samaritan Hospital*, 14 Ariz.App. 248, 252, 482 P.2d 497, 501 (1971) ("[A] cause of action in a malpractice case accrues when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendant's conduct.").

Although the discovery rule found wide application first in tort cases, a significant number of courts in recent years have applied the discovery rule to contract cases as well,[2] with at least three jurisdictions expressly extending the rule to all common law contract causes of action. *Bauman v. Day*, 892 P.2d 817, 828 (Alaska 1995) (applying discovery rule to breach of contract case involving a latent defect in real property; extending rule to common law contract causes of action); *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677, 680 (1981) (applying rule to breach of contract case involving latent defect in construction; extending rule to all causes of action); *Santee Portland Cement Co. v. Daniel Int'l Corp.*, 299 S.C. 269, 384 S.E.2d 693, 695 (1989) (extending discovery rule to contract claims).

The rationale behind the discovery rule is that it is unjust to deprive a plaintiff of a cause of action before the plaintiff has a reasonable basis for believing that a claim exists. 54 C.J.S. *Limitations of Actions* § 87(a) (1987). This reasoning is perfectly consistent with the kinds of cases to which this and other courts have applied the rule:

> A common thread seems to run through all the types of actions where courts have applied the discovery rule. The injury or the act causing the injury, or both, have been difficult for the plaintiff to detect. In most instances, in fact, the defendant has been in a far superior position to comprehend the act and the injury. And in many, the defendant had reason to believe the plaintiff remained ignorant he had been wronged. Thus, there is an underlying notion that plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. And often this is accompanied by the corollary notion that defendants should not be allowed to knowingly profit from their injuree's ignorance.

*April Enters. v. KTTV*, 147 Cal.App.3d 805, 195 Cal.Rptr. 421, 436 (Ct.App.1983). This rationale is also consistent with the cases where the discovery rule does not apply—cases where the plaintiff's injury is open and obvious. *See, e.g., Beaudry Motor Co. v. New Pueblo Constructors, Inc.*, 128 Ariz. 481, 482–83, 626 P.2d 1113, 1114–15 (App.1981) (breach of contract occurred and claim accrued when contractor abandoned repair of a leaking roof); *Cheatham v. Sahuaro Collection Serv., Inc.*, 118 Ariz. 452, 454, 577 P.2d 738, 740 (App.1978) (breach of contract occurred and claim accrued when debtor failed to pay on the date specified in a promissory note).

Decisions from the Arizona court of appeals considering the discovery rule in con-

2. *See April Enters. v. KTTV*, 147 Cal.App.3d 805, 195 Cal.Rptr. 421, 435–37 (Ct.App.1983); *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1202–03 (D.C.1984); *Brown v. Ellison*, 304 N.W.2d 197, 201 (Iowa 1981); *Puritan Medical Ctr. Inc. v. Cashman*, 413 Mass. 167, 596 N.E.2d 1004, 1009–10 (1992); *Anthony's Pier Four v. Crandall Dry Dock Eng'rs*, 396 Mass. 818, 489 N.E.2d 172, 177 (1986); *Church of the Nativity v. WatPro, Inc.*, 491 N.W.2d 1, 6 (Minn.1992); *Hebron Pub. Sch. Dist. v. United States Gypsum Co.*, 475 N.W.2d 120, 126 (N.D.1991); *Boghossian v. Ferland Corp.*, 600 A.2d 288, 290 (R.I.1991); *El Paso Assocs. v. J.R. Thurman & Co.*, 786 S.W.2d 17, 20 (Tex.Ct.App.1990); *Stuart v. Coldwell Banker Commercial Group*, 109 Wash.2d 406, 745 P.2d 1284, 1288 (1987).

tract cases are unclear and may be in conflict. Division Two of the court of appeals has applied the discovery rule to contract cases in at least two published opinions. *See HSL Linda Gardens Properties, Ltd. v. Freeman*, 176 Ariz. 206, 208, 859 P.2d 1339, 1341 (App.1993) (applying the discovery rule to a case involving the breach of an indemnity agreement under a contract to purchase real property); *Matusik v. Dorn*, 157 Ariz. 249, 250–51, 756 P.2d 346, 347–48 (App.1988) (applying the discovery rule to a case involving a breach of warranty under a construction contract). In Division One of the court of appeals, the court's treatment of the discovery rule is less clear. In *Cecil Lawter Real Estate School, Inc. v. Town & Country Shopping Center Co.*, the court held that the applicable four-year statute of limitations barred a breach of warranty claim, even though the plaintiff appears to have had no reason to know of the breach until less than two years before filing. 143 Ariz. 527, 539, 694 P.2d 815, 827 (App.1984). The court did not, however, discuss the discovery rule, and the plaintiff may not have raised it.

▮ In any event, we believe that Division Two properly applied the discovery rule to the breach of contract claims in *Matusik* and *HSL Linda Gardens*, and to the extent that *Cecil Lawter* suggests that the discovery rule cannot apply in breach of contract actions, we disapprove it. In our view, the important inquiry in applying the discovery rule is whether the plaintiff's injury or the conduct causing the injury is difficult for plaintiff to detect, not whether the action sounds in contract or in tort. Because Gust's injury meets this condition, we believe the trial court's application of the discovery rule was appropriate. The breach involved a private transaction between Prudential's predecessor and a third party. The conduct was difficult for Gust to detect because Gust was not a party to it. The leasing agent was in a position of superior knowledge and had full opportunity to know that its conduct constituted a breach of the lessor's contractual duty to Gust. These are the circumstances under which application of the discovery rule is most warranted.

▮ Prudential argues nonetheless that public policy considerations and "significant differences between tort and contract law" justify limiting the discovery rule to tort cases. We disagree. The defense of statute of limitations is never favored by the courts, and if there is doubt as to which of two limitations periods should apply, courts generally apply the longer. *Sato*, 123 Ariz. at 227, 599 P.2d at 183; *Andersen v. Thude*, 42 Ariz. 271, 274, 25 P.2d 272, 273 (1933); Charles M. Smith, *Arizona Practice: Civil Trial Practice* § 291 (1986).

▮ As for the difference between contract and tort, the discovery rule admittedly has gained wider acceptance in tort cases, and there are several jurisdictions that steadfastly maintain the traditional rule. *See, e.g., Ely–Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 599 N.Y.S.2d 501, 503, 615 N.E.2d 985, 987 (1993); *CLL Assocs. Ltd. Partnership v. Arrowhead Pac. Corp.*, 174 Wis.2d 604, 497 N.W.2d 115, 116 (1993). But because the rationale behind the discovery rule relates more to the circumstances under which a legal duty is breached and less to the nature of the cause of action, we believe Arizona courts should be able to apply the rule to appropriate cases in contract as well as in tort.

In fact, we find little to distinguish tort and contract such that the discovery rule should properly apply to one but not to the other. The difference "between tort and contract liability has become an increasingly difficult distinction to make." *Barmat v. John & Jane Doe Partners A–D*, 155 Ariz. 519, 523, 747 P.2d 1218, 1222 (1987) (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 92, at 655 (5th ed. 1984)). But even insofar as tort and contract are distinguishable, Prudential's arguments do not persuade us. We have said that the statute of limitations serves to protect defendants and courts from stale claims where plaintiffs have slept on their rights. *See Ritchie v. Grand Canyon Scenic Rides*, 165 Ariz. 460, 464, 799 P.2d 801, 805 (1990); *Brooks v. Southern Pac. Co.*, 105 Ariz. 442, 444, 466 P.2d 736, 738 (1970). However, whether a tort victim or a contract claimant,

a blamelessly uninformed plaintiff cannot be said to have slept on his rights.

■ Furthermore, the problems associated with stale litigation (*e.g.*, failing memory, unavailable witnesses) are no more acute in contract claims than they are in tort. And in either case, the requirement that parties exercise reasonable diligence safeguards against cases where a plaintiff has truly allowed his claim to become stale. *See, e.g., Condos v. United Benefit Life Ins. Co.*, 93 Ariz. 143, 146, 379 P.2d 129, 131 (1963) (holding that an illiterate plaintiff's claim relating to an insurance policy was barred because he failed to exercise reasonable diligence in ascertaining the terms of the policy). We also reject the suggestion that application of the discovery rule to contract cases would eviscerate the statute of limitations in commercial disputes. The discovery rule has applied uniformly in tort cases for some time, and we do not believe that the statute of limitations has ceased to serve its purpose in tort cases.

■ Prudential emphasizes that contract parties can allocate risk and build monitoring devices into their agreements, thus alleviating the need for the added protection of the discovery rule. Contracting parties can, of course, make such agreements. But so long as a party exercises reasonable diligence in monitoring the performance of another under the contract, we do not see why the party should lose a cause of action because he did not foresee the possibility of a concealed breach and provide for notice of that event in the contract itself.

We also question how extensive negotiated monitoring devices must be to have a meaningful effect. After all, the lessor in this case expressly promised to advise Gust if it granted more favorable terms to another tenant, yet Gust learned of the breach only after seventeen years of what the jury found to be reasonably diligent monitoring. Prudential argues that Gust could have bargained for periodic reviews of all the leases in the building. But if we truly imply into every contract a covenant of good faith and fair dealing, *see Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985), why should the parties have to secure from one another more than a solemn promise to perform? The law should not reward secretiveness.

■ Lastly, we reject Prudential's argument that the "constitutional underpinnings" of the discovery rule justify its application only to tort claims. The discovery rule developed in Arizona independent from the state constitutional provisions to which Prudential refers. Ariz. Const. art. 2, § 31; art. 18, § 6. The rule has developed as a matter of equity, *see Tom Reed Gold Mines*, 39 Ariz. at 535, 8 P.2d at 450, not as a matter of constitutional law.

## DISPOSITION

■ We hold that the discovery rule can apply to breach of contract claims governed by section 12–548. The trial court and the court of appeals did not err in applying it here. Therefore, the statute of limitations did not commence on Gust's claim until Gust knew or in the exercise of reasonable diligence should have known that it had been injured. The trial court was correct to let the jury decide when that event occurred. We affirm. Pursuant to the fees provision in the parties' lease agreement, we award Gust attorney's fees for proceedings on the petition for review.

---

ROBERT J. CORCORAN, Justice

---

THOMAS A. ZLAKET, Justice

---

RUTH V. McGREGOR, Judge
  MARTONE, Justice, concurring.

I agree with the court that the discovery rule can apply to some contract cases. In a very real sense, this case is no different than *Tom Reed Gold Mines Co. v. United Eastern Mining Co.*, 39 Ariz. 533, 8 P.2d 449 (1932). Sixty-three years ago, we held that the discovery rule applied to an action in trespass, not because it was a tort, but because the defendant concealed facts from the plaintiff. So instead of applying the tort statute of limitations to the tort pled, we applied the fraud statute of limitations, which even today states that the "cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." A.R.S. § 12–543(3).

This is that sort of case. As we note, *ante*, at 587, 898 P.2d at 965, Gust wrote to the building's leasing agent and asked if anything had occurred that would invoke its most favored nation clause. "The leasing agent replied that it had not violated Gust's most favored nation clause and that it never would." *Id.* The discovery rule created by the legislature in A.R.S. § 12–543(3) applies just as it applied in the *Tom Reed* case.

And this is as it ought to be. Statutes of limitation are, by definition, peculiarly within the province of the legislature. As we note, *ante*, at 588 n. 1, 898 P.2d at 966 n. 1, the legislature has adopted the discovery rule for some contract cases and not for others. But whenever there is concealment, the statutory discovery rule applies whatever the label of the cause of action. Because the rule the court adopts is but a modest extension of the discovery rule from cases in which there is true concealment to a carefully tailored class of contract cases in which "injury is difficult for plaintiff to detect," *ante*, at 590, 898 P.2d at 968, I join its opinion.

FELDMAN, C.J., did not participate in this matter; pursuant to Ariz. Const. art. 6, § 3, RUTH V. McGREGOR, Judge of the Court of Appeals, Division One, was designated to sit in his stead.